DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Billy G. Schindewolf, et al., ) | |
| ) | CASE NO. 5:10-CV-00204 |
| Plaintiff(s), ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Seymour Construction, Inc., et al., ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

**I. Introduction**

On January 29, 2010, Billy G. Schindewolf, Doris M. Schindewolf, and the Schindewolf Living Trust ("Plaintiffs") filed a Complaint in this Court alleging that Seymour Construction, Inc. and its president, Scott Seymour, ("Defendants") are liable to Plaintiffs for breach of contract, unjust enrichment, "quasi contract," conversion, "piercing the corporate veil," and fraud. On March 24, 2010, Defendants filed a motion to dismiss this case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Florida. Plaintiffs filed a memorandum in opposition to Defendants' motion on April 6, 2010, and, on April 13, 2010, Defendants replied to Plaintiffs' memorandum in opposition.

After considering the parties' pleadings and affidavits, the Court denies Defendants' motion to dismiss for lack of personal jurisdiction and grants Defendants' alternative motion to transfer the case to the United States District Court for the Northern District of Florida.

**II. Background**

Plaintiffs, who are residents of Canal Fulton, Ohio, purchased a parcel of real property in Panama Beach City, Florida in August of 2006. (Compl. ¶¶ 1, 8.) Plaintiffs' former attorney, Kevin Keogh, introduced Plaintiffs to Defendants–a corporation incorporated in Georgia with its principal place of business in Peachtree City, Georgia and its President, an individual who also resides in Peachtree City– in order to discuss a partnership to develop Plaintiffs' Florida property. (Schindewolf Decl.¶ 2.) Plaintiffs and Defendants communicated primarily via telephone and email thereafter, but Defendants had numerous face-to-face meetings in Georgia and Florida with Plaintiffs' representatives, and Defendants made one trip to Ohio at Plaintiffs' request to meet with Plaintiffs to discuss the project. (Seymour Decl. ¶ 5-6. )

After a period of negotiations, Plaintiffs entered into an agreement with Defendants to develop Plaintiffs' real property in Panama Beach City, Florida into a condominium tower. (Compl. ¶¶ 8-9.) The parties drafted a Memorandum of Interest ("MOI") containing the terms of their agreement, which Plaintiffs' executed and sent to Defendants on June 8, 2007. (*Id.* ¶ 9.) The MOI indicates that Defendant Seymour Construction, Inc. intended to partner with Plaintiffs to develop a seventeen-unit, seventeen-story luxury condominium called "The View" in Panama City, Florida. (Ex. 1.) To this partnership, Seymour Construction pledged to provide its "broad array of development capabilities" to assist in the interpretation of feasibility studies and the development of project budgets, oversee architectural and engineering services, provide financial advisory services, secure funding for the project, serve in a leadership capacity toward the selection and retention of various marketing services for the project, and provide development management services. (*Id.*)

After Seymour Construction confirmed and verified the permits and engineering studies for the project and confirmed the project's viability in light of the current local market conditions and the reports of real estate consultants regarding the demand for presale of the units, the MOI indicates that the parties would then create a limited liability company or joint venture to carry out the development of the project. (*Id.*)  Plaintiffs were to deed their Panama City parcel to the entity and, in return, receive a twenty-five percent equity interest. (*Id.*)  Based on an estimated construction cost of $21 million, Seymour Construction would receive the remaining seventy-five percent. (*Id.*)  The MOI also addresses the distribution of the profits from the project between the parties, but indicates that it is non-binding and only serves to frame the foundation of a future partnership, with a definitive legal agreement to follow after the parties negotiated all of the other essential terms. (*Id.*)  It does, however, specify that Plaintiffs were to advance Defendants $500,000, which Defendants were to refund upon the non-occurrence of certain conditions. (*Id.*)

Plaintiffs' claims arise from their allegations that Defendants did not comply with the terms of the MOI and that Defendants have used Plaintiff's funds for purposes other than those set forth in the MOI. (Compl. 4-7.)

**III. Discussion**

**A. Personal Jurisdiction**

**1. Standard of Decision**

On a motion to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), the plaintiff bears the burden of convincing the Court that it has in personam jurisdiction over the defendant. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). *See*

*also Hitachi Medical Sys. Am., Inc. v. Branch*, No. 5:09-cv-01575, 2010 WL 816344, at *2 (N.D. Ohio Mar. 4, 2010). When the Court decides the motion on affidavits alone, as in this case, "the plaintiff's burden is 'relatively slight,'" *Thomson*, 545 F.3d at 360 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) ), requiring only a "'prima facie' showing" that personal jurisdiction exists in order to defeat the motion to dismiss. *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Hitachi*, 2010 WL 816344, at *2 (citing *Theunissen*, 935 F. 2d at 1458). The Court must view the parties' pleadings and affidavits "in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Thomson*, 535 F.3d at 360 (citing *Theunissen*, 935 F.2d at 1459). The Court may, however, consider the "undisputed factual representations of the defendant that are consistent with the representations of the plaintiff." *Hitachi*, 2010 WL 816344, at *2 (citing *Kerry Steel, Inc. v Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997)).

Given that this Court has subject matter jurisdiction over Plaintiffs' claims only on the basis of diversity-of-citizenship jurisdiction, which the parties do not dispute,[1] the Court must consider the forum state's laws to determine whether the Court has personal jurisdiction over Defendants. *Thomson*, 545 F.3d at 361 (citing *Calaphon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Since Ohio's long-arm statute "is not coterminous with federal constitutional limits, *Id.* (citing *Calaphon*, 228 F.3d at 721), the Court must first determine whether Ohio law

---

[1] The first heading in the Defendants' Reply to Plaintiffs' Memorandum in Opposition to Dismiss or in the Alternative for Transfer asserts that this Court lacks subject matter jurisdiction over Plaintiffs' claims, but considering that the content of Defendants' argument that follows, which disputes only the Court's personal jurisdiction over Defendants, the Court will assume that this heading is merely an error.

authorizes jurisdiction over Defendants, and, if so, then proceed to consider whether such authorization comports with the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Brunner*, 441 F. 3d at 463).

There are two types of personal jurisdiction that the Court could have over Defendants: general jurisdiction, which results from a defendant's continuous and systematic contacts with Ohio and enables the Court to exercise its adjudicatory power over the defendant on claims unrelated to the defendant's contacts with the forum state, and specific jurisdiction, for which continuous and systematic contacts are not necessary but which extends only to those claims arising out of, or related to, the defendant's contacts with the forum. *Id.* (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996)).  In their Complaint, Plaintiffs appear to set out to establish the Court's specific jurisdiction over Defendants, asserting that Defendants' trip to Ohio to meet with Plaintiffs, in addition to Defendants' email and telephone communication with Plaintiffs and the resulting contractual relationship between the parties, constitute "more than minimal contacts" with Ohio. (Compl. ¶ 6.)  In their Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative to Transfer, however, Defendants, through references to Plaintiffs' "additional business dealings" and "ownership of property in Hartville, Ohio," seem to suggest that Plaintiffs would be subject to general jurisdiction in Ohio as well. (Pls.' Mem. 7-8.)

**2. Analysis**

**a. Long-Arm Statute Analysis**

Plaintiffs assert that Defendants qualify for personal jurisdiction under Ohio's long-arm statute, R.C. 2307.382, because it provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons' . . .

[t]ransacting any business in this state." (Pls.' Mem. 3.) Ohio courts have interpreted "transact" broadly to mean "to *prosecute* negotiations; to carry on business; *to have dealings*." *Verulux, LTC v. Johnston*, No. 3:09 CV 823, 2010 WL 1795888, at *4 (N.D. Ohio May 5, 2010) (citing *Kroger Co. v Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (quoting *Kentucky Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 75, 559, N.E.2d 477 (1990)) (emphasis in original).

Plaintiffs have made a prima facie showing that Defendants' conduct in Ohio constitutes "transacting business." While the negotiations between the parties took place via email and telephone and also included meetings outside of the state, Defendants' trip to Ohio to meet with Plaintiffs was essential to gaining their commitment to enter an agreement with Defendants to develop Plaintiffs' Florida property. (Defs.' Mem. 5; Schindewolf Decl. ¶ 3.) The MOI demonstrates that the parties intended to establish an ongoing business relationship through the creation of a limited liability company or joint venture apportioning ownership interests of the condominium project and the distribution of its profits. (Ex. A.) In order to create this continuing relationship, Defendants chose to enter Ohio to meet with Plaintiffs as part of their course of dealings. Even though Plaintiffs' pleadings and affidavits are unclear as to which party initiated the negotiations, the Court finds that Defendants' decision to pursue a development agreement with Plaintiffs by traveling to Ohio demonstrates the sort of "purposely directed" efforts that trigger personal jurisdiction. *See Columbus Show Case Co. v. CEE Contracting, Inc.*, 75 Ohio App. 3d 559, 565, 599 N.E.2d 881, 885 (Ohio App. 10th Dist. 1992) (citing *Burger King Corp v Rudzewicz*, 471 U.S. 462, 476 105 S. Ct. 2174, 2184 (1985)).

Defendants assert that their contacts with Ohio do not constitute "transacting business" by analogizing their contacts with Ohio those of the defendants in *Ashton Park Apartments., Ltd*

*v. Carlton-Naumann Constuction, Inc.*, No. L-08-1395, 2009 WL 4446934 (Ohio App. 6th Dist. December 4, 2009), and *Capital Dredge & Dock Corp v. Midwest Dredging Co.,* 573 F.2d 377 (6th Cir. 1978). (Defs.' Mem. 6; Defs.' Reply 4.)  In *Ashton Park*, which involved an Ohio limited liability company's suit against a Florida construction company regarding defects in a home that the defendant built for the plaintiff's assignor, the Sixth District held that the trial court's order to dismiss the complaint against the nonresident defendant for lack of personal jurisdiction was proper because "[e]very aspect of the contract (their execution of the contract, payments, and communication) concerning the buyers involves Ohio [and] [e]very aspect of the contract (its execution of the contract, building of the home, and communication) involving the builders occurs in Florida." 2009 WL 4446934, at *4-*5 .  Moreover, "the only contact [the defendant] had with Ohio was the use of interstate communication lines for the purpose of executing and performing a contract." *Id.* at *2.  Here, however, Defendants made a trip to Ohio meet with Plaintiffs regarding their proposed partnership in the Florida condominium development.  The nature of this contact with Ohio distinguishes this case from *Ashton Park* and is sufficient to satisfy Plaintiffs' prima facie showing that Defendants "transacted business" in Ohio in accordance with the state's long-arm statute.

*Capital Dredge* is also not sufficiently analogous to this case to influence the Court's evaluation of Defendants' conduct in Ohio.  *Capital Dredge* involved a breach of contract action in which the nonresident defendant corporation disputed the district court's personal jurisdiction. 573 F.2d at 378.  Even though a representative from the corporation made a trip to Ohio to "pick up a check and to present the contract, which had been prepared and signed by [the defendant's] officers in Arkansas to [the plaintiff] for signature," the Sixth Circuit affirmed the district court's holding that the court lacked personal jurisdiction over the defendant because "all negotiations

were conducted outside the State of Ohio" and the defendant's representative's visit to Ohio was "fortuitous,"a "convenience" to the plaintiff. *Id* at 380.  Unlike the Ohio visit in *Capital Dredge*, Defendants' trip to Ohio was not merely a "convenience" to Plaintiffs, but was part of, and essential to, the negotiations between the parties.  In *Capital Dredge*, the district court's description of the defendant's trip to Ohio as a "convenience" implies that the parties would have entered into the same agreement without the visit; here, to the contrary, Plaintiffs have shown that they would not have otherwise agreed to pursue a partnership with Defendants if Defendants would not commit to a meeting at Plaintiffs' home in Canal Fulton. (Schindewolf Decl. ¶ 3.)

**b. Due Process Analysis**

Plaintiffs argue that this Court's personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment because Defendants' contacts with Ohio are such that exercising personal jurisdiction over Defendants would not "offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).  In order to meet this standard, Defendants' contacts must satisfy the three-prong test that the Sixth Circuit outlined in *Southern Machine Co v. Mohasco Industries*, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposely avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendants or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

A defendant's contacts meet the "purposeful availment" prong of this test when the defendant reaches into the forum state to establish a continuing obligation in Ohio such that the defendant could reasonably anticipate being haled into court there. *See Tharo Sys., Inc v. Cab*

*Producttechnik GMBH & Co. KG*, 196 Fed. Appx. 366, 370 (6th Cir. 2006).  A defendant's contacts satisfy the "arising from" prong when the "'defendant's contacts with the forum state are related to the operative facts of the controversy.'" *Id.* (citing *CompuServe, Inc v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996)).  Finally, the "reasonableness" prong involves several factors such as the burden on the defendant, the interest of the forum state, and the plaintiff's interest in obtaining relief. *Id* (citing *CompuServe*, 89 F.3d at 1268).  When the defendant's contacts satisfy the first two prongs of the test, however, the "reasonableness prong" will be presumed. *Id.* (citing *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)).

Plaintiffs have done enough to make a prima facie showing that Defendants' contacts with Ohio meet the *Southern Machine* test. Defendants' trip to Ohio in order to visit Plaintiffs to continue the negotiation of their partnership in the condominium project demonstrates Defendants' affirmative effort to reach into Ohio to establish an ongoing relationship with Plaintiffs, thereby satisfying the "purposeful availment" prong. (Schindewolf Dec. ¶ 3.) Furthermore, Plaintiffs meet the "arising under" prong because their six claims against Defendants are all related to the agreement that arose out of Defendants' visit with Plaintiffs at their home. (Compl. 4-7.)  Since Defendants purposefully availed themselves of the privilege of transacting business in Ohio and Plaintiffs' causes of action arise from Defendants' conduct in Ohio, the Court presumes, in the absence of any unusual circumstances, that the exercise of personal jurisdiction over Defendants is reasonable.

Defendants argue that *LAK Inc. v Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989), and *Capital Dredge* demonstrate that Defendants' contacts with Ohio do not meet the "purposeful availment" prong of the *Southern Machine* test. (Defs.' Mem. 7.)  In *LAK*, the Sixth Circuit reversed the district court's judgment granting specific performance on a real estate

contract against a nonresident defendant partnership because the district court erred in denying the defendant's motion to dismiss for lack of personal jurisdiction. 885 F.2d at 1293. Defendants emphasize that the *LAK* Court found that the defendant's telephone communication with the prospective Michigan buyers was not sufficient to constitute purposeful availment. (Defs.' Mem. 7.) Plaintiffs, of course, do not rely solely upon telephone and email communication to establish that Defendants' purposefully availed themselves of the privilege of transacting business in Ohio, so the *Lack* holding does not prevent the Court from exercising personal jurisdiction over Defendants. As for Defendants' reliance on *Capital Dredge*, the Court has already distinguished the nature of Defendants' visit here from that of the *Capital Dredge* defendant's "fortuitous" presence in Ohio on the ground that Defendants' visit to Ohio was not for the "convenience" of Plaintiffs, but rather served to promote the Defendants' interest in pursuing a mutually-beneficial partnership.

Since the Court finds that Plaintiffs have satisfied their burden that the exercise of personal jurisdiction over Defendants would be consistent with the Constitution's Due Process requirement, the Court denies Defendants' motion to dismiss for lack of personal jurisdiction. Furthermore, because the Court finds that it can exercise specific jurisdiction over Defendants in the adjudication of Plaintiffs' claims, it need not consider Plaintiffs' suggestions that general jurisdiction would also be appropriate.

**B. Transfer of Venue**

**1. Standard of Decision**

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might otherwise have been brought." Congress has granted district courts this

discretionary power in order to "prevent the waste of 'time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense * * *.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960).

The text of § 1404(a) makes it clear that the threshold inquiry for the Court in considering a 1404(a) transfer is whether the case "might otherwise have been brought" in the transferee court. If so, the Court must "weigh in the balance a number of case-specific factors" in determining whether a transfer would promote justice and convenience. *Stewart Org., Inc. v. Rioch Corp.*, 487 U.S. 22, 29 (1988). These factors include "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public concerns, such as systematic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart*, 487 U.S. at 30). *See also Kerbo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 30 (1972) ("The district court must weigh a number of case-specific factors such as the convenience of the parties and witnesses, 'public-interest factors of systematic integrity,' and private concerns falling under the heading 'the interests of justice'").

District courts vary in their enumeration of the specific factors to consider when ruling on a motion to transfer pursuant to § 1404(a), but such factors can include: (1) the plaintiff's choice of forum, (2) the residence of the parties, (3) the nature of the suit, (4) the place where events took place, (5) the possibility of inspecting the premises, (6) the ease of access to sources of proof, (7) the location of material witnesses, (8) the availability of compulsory processes for the attendance of those witnesses, (9) other problems that may contribute to litigation expenses, (10)

the local interest in deciding the controversy locally, (11) the burden of jury duty on the community, and (12) the congestion of court dockets. *See Krawec v Allegheny Co-Op Ins. Co.*, No. 1:08cv2124, 2009 WL 1974413, at *4 (N.D. Ohio July 7, 2009). From this variation, it is clear that there is no definitive list of private and public factors in the 1404(a) calculus. *See Soprema, Inc. v Beachside Roofing LLC*, 2010 WL 1132662, at *8 (N.D. Ohio March 18, 2010) (quoting *Centerville ALF, Inc v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002)). Courts need not discuss every factor that may influence the balance of conveniences and the interest of justice, but rather should "'focus [their] analysis on those factors that are particularly relevant to a given transfer determination.'" *RFF Family Partnership, LP v. Wasserman*, No. 1:07 CV 1617, 2010 WL 420014, at *4 (N.D. Ohio Jan. 29, 2010) (quoting *Krawec*, 2009 WL 1974413, at *4).

**2. Analysis**

The Court sees no reason that why this action might not otherwise have been brought in the Northern District of Florida. Defendants contend that the Northern District of Florida would be a far more appropriate forum for the resolution of this case, (Defs.' Mem. 9), and Plaintiffs do not dispute that the United States District Court for the Northern District of Florida would have personal jurisdiction over Defendants and subject matter jurisdiction over Plaintiffs' claims. Plaintiffs also do not contend that venue would be improper in the Northern District of Florida under 28 U.S.C. § 1391(a). The Court, therefore, finds that the motion for transfer pursuant to § 1404(a) passes the threshold inquiry.

A consideration of the relevant factors affecting convenience and the interest of justice in this case leads this Court to conclude that the Northern District of Florida would be a more appropriate venue for this action. Plaintiffs' claims deal with the actions that Defendants' agreed

to take in Florida to develop Plaintiffs' real property in Florida. (Defs.' Reply 8.) All but one of the non-party witnesses whom Defendants would call upon to testify as to Defendants' use of Plaintiffs' funds, including an architect who prepared plans for the project, attorneys who handled zoning matters, an engineer involved with the site, and a realtor who provided marketing services for the project, are located in Florida. (*Id.* 9.) If this action were to proceed in the Northern District of Ohio, Defendants' would have to bear the burden and cost of transporting all of these witnesses from Florida to Ohio and deal with difficulties that may arise in the event that Defendants have to compel the attendance of the witnesses or the production of documents. (*Id.* at 10-11.)

Plaintiffs' argue that Florida is no more appropriate for the litigation of this dispute than Ohio. To support this position, Plaintiffs argue that the Court should defer to their choice of forum and point out that while Florida may be more convenient for Defendants, it is inconvenient for Plaintiffs and their witnesses, including several family members and their former attorney. (Pls.' Mem. 12-13.) Plaintiffs also contend that Ohio has more of an interest in protecting Plaintiffs than does Florida. (Pls. Mem. 14.) Despite these arguments, the Court concludes that transferring this action to the Northern District of Florida would result in a significant aggregate reduction in inconvenience for the parties and witnesses without impairing the interest of justice. With the exception of one meeting in Ohio, the vast majority of the events involved in this dispute took place in Florida, where Plaintiffs' property is located and where Defendants were to use Plaintiffs' funds toward the development of the condominium project. Plaintiffs do not face the same difficulty in compelling the attendance of their witnesses in Florida that Defendants would bear in litigating this dispute in Ohio. Furthermore, Florida certainly has an interest in providing a remedy to those who own property in the state. The

Court, therefore, grants Defendants' motion to transfer this action to the United States District Court for the Northern District of Florida.

    IT IS SO ORDERED.

| | |
|---|---|
| <u>June 3, 2010</u> | <u>  *s/ David D. Dowd, Jr.*  </u> |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |